UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LINDA C. MIMS,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    12-CV-1042S
CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

        1.      Plaintiff Linda Mims challenges an Administrative Law Judge's ("ALJ")

determination that she was not disabled within the meaning of the Social Security Act ("the

Act") from August 24, 2004 to June 12, 2008.

        2.      On February 28, 2009, Mims filed applications for Disability Insurance

Benefits ("DIB") and Disabled Widow's Benefits ("DWB") under Title II of the Act, alleging

a disability onset date of August 24, 2004. (R. 151-59.)[2] These applications were denied.

(R. 84-91.) Mims filed a written request for a hearing on July 6, 2009, which was held

before ALJ Robert T. Harvey on November 10, 2010. (R. 37-73.) Two days before the

hearing, on November 8, 2010, Mims filed an application for Supplemental Security Income

("SSI") under Title XVI of the Act, again alleging a disability onset date of August 24, 2004.

(R. 171-76.) Mims was represented by counsel at the hearing, at which she appeared in

person and testified. (R. 37-73.)

---

        [1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is
substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of
Civil Procedure.

        [2] Citations to the administrative record are designated as "R."

                                        1

3.     ALJ Harvey considered all three of Mims' applications *de novo* and, on January 4, 2011, issued a written decision finding her disabled beginning June 12, 2008, but not disabled prior to that date. (R. 17-36.) Mims filed a request for review with the Appeals Council, which denied the request on August 31, 2012. She  commenced this civil action on October 29, 2012, challenging the Commissioner's final decision.[3]

4.     Mims and the Commissioner filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, on July 15, 2013 and July 17, 2013, respectively. The motions were fully briefed on August 19, 2013, at which time this Court took the matter under advisement.   For the reasons set forth below, the Commissioner's motion is granted and Mims' motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.     "To determine on appeal whether the ALJ's findings are supported by

_____

[3]  The ALJ's January 4, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.      The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     In this case, the ALJ made the following findings with regard to the five-step process: (1) Mims had not engaged in substantial gainful activity since her alleged disability onset date of August 24, 2004 (R. 25); (2) since that date, her cerrvical pain, cervical radiculopathy, gout and asthma had been severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id.); (4) Mims has the residual functional capacity ("RFC") to perform light work, with limitations (R. 26); (5) since August 24, 2004, she has been unable to perform her past relevant work (R. 28); (6) from August 24, 2004 to June 12, 2008, jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R.

29); (7) on June 12, 2008, Mims became an individual of "advanced age" (Id.); and (8) since that date, there have been no jobs that exist in significant numbers in the national economy that a person of advanced age with her education, past relevant experience, and RFC could perform.

11.    Mims challenges the determination as to her disability onset date on the grounds that: (a) the ALJ failed to develop the record as to her RFC, (b) his assessment of her credibility is not supported by substantial evidence, and (c) the Commissioner did not meet his burden at step 5 of the evaluation process.

12.    According to Mims, remand is warranted because ALJ Harvey made an RFC determination "upon a vacuum of evidence as to functional abilities" (Docket No. 10-1 at 10), and without "first making reasonable efforts to obtain [a functional assessment] from a treating source" (id. at 11).

It is well-settled that disability hearings are non-adversarial, and that an ALJ has a duty to develop the record in certain instances.

> Although an ALJ has an affirmative duty to develop the administrative record even when a claimant is represented by counsel, see Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996), "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim," Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir.1999) (internal quotation marks omitted); see also 20 C.F.R. § 416.912(d) (stating that before ALJ will determine that claimant is "not disabled, [ALJ] will develop [claimant's] complete medical history").

Lowry v. Astrue, 474 Fed. Appx. 801, 804, 2012 WL 1142308 at *2 (2d Cir. 2012). More recently, a panel of the Second Circuit Court of Appeals expressly rejected the proposition that an ALJ's failure to request an RFC assessment from a treating physician necessarily or automatically requires remand. Tankisi v. Commissioner of Social Security, No.

12-1398-CV, 2013 U.S. App. LEXIS 6545, 2013 WL 1296489 (2d Cir. Apr. 2, 2013) ("remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"). Thus, the relevant inquiry is whether, absent such an assessment, the record in this case was sufficient to support the ALJ's RFC assessment. I conclude that it was.

The record contained treatment notes from Dr. Figueroa (R. 709-21), and Dr. Simmons, the orthopaedist to whom Figueroa referred Mims (R. 249-66). Simmons opined that Mims had a total temporary disability with regard to her regular work (which she described at the hearing as requiring a medium level of exertion), and "a moderate partial disability with regards to all work." (e.g., R. 251.) Mims sought further evaluation by Dr. Leone, an orthopaedic surgeon, who assessed her as having a moderate partial disability that limited her to light/sedentary work with no overhead activity, no bending or twisting, and no lifting, pushing, pulling or carrying of more than 20 pounds. (R. 402-405.) Consultative examinations were performed by Drs. Meng (2006) and Bender, both of whom specifically assessed Mims' exertional limitations. (2009) (R. 803-06, 487-91.) Meng assessed mild limitations in heavy lifting, pushing and pulling, and in extension, bending, twisting and head turning. Bender described moderate limitations with pushing, pulling, reaching, carrying and lifting greater than 15-20 pounds and mild limitations with climbing an excessive number of stairs and walking prolonged distances. Both observed that Mims should avoid fumes, dust, and other asthma triggers.[4] The ALJ also considered Plaintiff's conservative treatment history and examinations and test results, which generally showed

---

[4] Though there are similarities among all these assessments, the ALJ assigned significant weight to Dr. Bender's more recent assessment, and some weight to the earlier assessments of Dr. Leone and Dr. Meng.

unremarkable or mild symptoms.

Because these records were sufficient to permit an informed finding by the ALJ that Mims could perform light work with additional limitations, remand is unwarranted. Mims' additional arguments regarding the adequacy of the administrative record have been considered and are found to be without merit.

13.     Mims next maintains the ALJ's assessment of her credibility is not supported by substantial evidence. ALJ Harvey concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 26). Mims contends this statement supports a conclusion that the ALJ inappropriately measured her credibility against his own RFC finding.

As part of the credibility assessment, an ALJ must evaluate "the intensity, persistence and limiting effects of the [claimant's symptoms], which requires a credibility assessment based on the entire case record." Robins v. Astrue, 2011 U.S. Dist. LEXIS 63145, 2011 WL 2446371, *4 (E.D.N.Y. 2011). (citing 20 C.F.R. § 404.1529(c)). The relevant factors to be weighed include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her

pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." Id. (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

Here, it is apparent the ALJ assessed Mims' subjective complaints in the context of a comprehensive review of the entire medical record and after explicit questioning about the relevant factors at the hearing. In doing so, he accounted for the factors identified above.  A number of courts have rejected the argument Mim now makes where, as here, it is apparent the credibility assessment was based, not on the RFC determination, but on the record as a whole. See Luther v. Colvin, 2013 U.S. Dist. LEXIS 102062, 2013 WL 3816540, *7-8 (W.D.N.Y. 2013) (ALJ properly assessed plaintiff's subjective complaints despite language in opinion that the alleged symptoms were "inconsistent with the above residual functional capacity"); Briscoe v. Astrue, 892 F. Supp. 2d 567, 585 (S.D.N.Y. 2012) ("[r]ead in context, . . . , this statement does not indicate that the RFC assessment was a basis for a finding of lack of credibility"). Because ALJ Trost's credibility assessment is supported by substantial evidence, remand is unwarranted.

Mims also faults the ALJ for not acknowledging her good work history as part of the credibility assessment. To be sure, "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see, Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (noting that evidence of good work record is evidence of credibility). But work history is "just one of many factors" appropriately considered in the credibility assessment. Schaal, 134 F.3d at 502.

In rejecting Mims' testimony as to the severity of her impairments, the ALJ reasonably relied on contrary evidence in the record, including records from her treating

and examining sources, some of which indicated that Mims could perform work, at least at a light duty level. The ALJ's conclusion also is consistent with Mims' testimony that she can bathe, dress, feed herself, cook, clean, attend church, and visit with friends. (R. 28.) Finally, the ALJ necessarily considered Mims' work history in concluding that her limitations prevented her from performing her past work. In light of the foregoing, the Court finds the credibility assessment is not undermined by the ALJ's failure to specifically note a good work history.

14.     Next, Mims contends that the ALJ erred by relying on Medical-Vocational Rule 202.14, which pertains to light work, when he should have applied a Rule pertaining to sedentary work. This is, in essence, a further argument that the ALJ's RFC assessment is not supported by substantial evidence. Having already resolved that issue, the argument is rejected.

Finally, it is alleged that the ALJ erred because he did not inquire of the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. Reviewing courts have applied SSR 00-4p and held that the Commissioner did not produce substantial evidence of the existence of jobs in the national economy when the ALJ failed to inquire about an "apparent unresolved conflict" between the expert's testimony and the DOT. Diaz v. Astrue, 2012 U.S. Dist. LEXIS 125708, at *11-12 (D. Conn. Aug. 2, 2012) (citations omitted). Because Mims has not pointed to any such conflict here, nor is a conflict otherwise apparent, this argument is rejected.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings

9

(Docket No. 11) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10)
is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:   February 3, 2014
              Buffalo, New York

$\overline{\hspace{2cm}\text{/s/William M. Skretny}\hspace{2cm}}$
WILLIAM M. SKRETNY
Chief Judge
United States District Court